IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, and TERRY NELSON, in his official capacity as a fiduciary,<br><br>*Plaintiffs*,<br><br>v.<br><br>SUN ART PAINTING CORP.,<br><br>*Defendant*. | Civil Action No. ELH-23-01634 |

**MEMORANDUM**

In this ERISA action, plaintiffs International Painters and Allied Trades Industry Pension Fund and Terry Nelson, in his official capacity as a fiduciary (collectively, the "Fund"), filed suit against defendant Sun Art Painting Corp. ("Sun Art"). ECF 1. Plaintiffs allege withdrawal liability under 29 U.S.C. §§ 1399(c)(5), 1401(b)(1), and 1451(a).

Sun Art was served with the suit on August 7, 2023. ECF 4. But, Sun Art failed to respond. *See* Docket. As a result, the Clerk entered a default on September 26, 2023. ECF 6. Notice of the default was sent to Sun Art on the same date. ECF 7.

Pursuant to Fed. R. Civ. P. 55(b)(1), the Fund has moved for entry of a Default Judgment. ECF 8. It is supported by a "Brief In Support Of Motion For Default Judgment" (the "Memorandum", ECF 8-2) (collectively, the "Motion"), and several exhibits. Sun Art has not responded.

For the sound reasons expressly stated by plaintiffs, I agree with their entitlement to all of the monetary requests, with the exception of the amount they seek for attorneys' fees. Therefore, I turn to discuss the matter of the attorneys' fees.

The lodestar method is ordinarily used to determine an appropriate and reasonable counsel fee award. It involves multiplying the lawyer's reasonable hourly rate by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *McAfee v. Boczar,* 738 F.3d 81, 88 (4th Cir. 2013), *as amended* (Jan. 23, 2014); *Grissom v. The Mills Corp.,* 549 F.3d 313, 320 (4th Cir. 2008); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978).

The Supreme Court has observed that the lodestar method produces presumptively reasonable fee awards, and is "readily administrable." *Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (citing *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001)). "A 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious … case." *Perdue*, 559 U.S. at 552. Indeed, there is "a strong presumption that the lodestar number represents a reasonable attorney's fee." *McAfee*, 738 F.3d at 88-89) (internal quotation marks omitted).

In *McAfee*, 738 F.3d 81, a case lodged pursuant to 42 U.S.C. § 1983, the Fourth Circuit said, *id.* at 88:

> The proper calculation of an attorney's fee award involves a three-step process. First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

The *Johnson* factors, referenced in *McAfee*, are as follows: (1) the time and labor expended; 2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *See McAfee*, 738 F.3d at 88 n.5; *Barber*, 577 F.2d at 229 n.28.

The *Johnson* factors are considered by a court "'in conjunction with the lodestar methodology' and, 'to the extent that any of these factors already has been incorporated into the lodestar analysis, [it does] not consider that factor a second time.'" *Dorsey v. TGT Consulting, LLC*, CCB-10-92 2014 WL 458999, at *2 (D. Md. Feb. 4, 2014) (quoting *E. Assoc. Coal Corp. v. Dir., Office of Workers' Comp. Program*, 724 F.3d 561, 570, 570 n.5 (4th Cir. 2013)); *see also*, *e.g.*, *Hensley*, 461 U.S. at 434 n.9 ("[M]any of the [*Johnson*] factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.").[1]

---

[1] In *Corral v. Montgomery Co.*, 91 F. Supp. 3d 702, 713 n. 4 (D. Md. 2015), Judge Chasanow noted that the Supreme Court seemed to question the *Johnson* approach in *Perdue,* 559 U.S. at 551–52, describing it as an "alternative" to the lodestar method and explaining that it provides too little guidance for district courts and places too much emphasis on subjective considerations.  The Supreme Court said, *id.* at 551: "[T]he lodestar method is readily administrable, and unlike the *Johnson* approach, the lodestar calculation is objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." (internal citations omitted).

Nonetheless, "the *Johnson* factors, as opposed to the *Johnson* method, are still relevant in informing the court's determination of a reasonable fee and a reasonable hourly rate"; "[*Perdue*] cautions against using a strict *Johnson* approach as the primary basis for determining reasonable attorneys' fees, but nowhere calls into question the idea of using relevant *Johnson* factors in

The lodestar calculation relies on "objective" standards, *i.e.*, "the prevailing market rates in the relevant community," and what the attorney would have received from "a paying client who was billed by the hour in a comparable case." *Perdue,* 559 U.S. at 551.  The standard "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 552.

For the court to address the reasonableness of fees, the party seeking fees "must provide 'detailed records' that specify 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Matias Guerra v. Teixeira*, TDC-16-0618, 2019 WL 3927323, at *2 (D. Md. Aug. 20, 2019) (quoting *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. June 23, 2016)). Plaintiffs have done so here.

The movant "bears the burden of documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437; *see McAfee* 738 F.3d at 244 (*citing Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990)); *see also Corral v. Montgomery Co.*, 91 F. Supp. 3d 702 (D. Md. 2015).  The movant also bears the burden to show that any upward adjustment to the lodestar amount is necessary. *See*, *e.g.*, *Blum v. Stenson*, 465 U.S. 886, 898 (1984).

Notably, counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434.  "'Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to

---

helping to come to a reasonable fee." *Spencer v. Cent. Servs., LLC,* CCB–10–3469, 2012 WL 142978, at **5–6 (D. Md. Jan. 13, 2012) (internal quotations marks and citations omitted).

statutory authority.'" *Id*. (quoting *Copeland v. Marshall,* 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (emphasis in *Copeland*)).

After consideration of the lodestar amount and any appropriate adjustments, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones," and "award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *McAfee*, 738 F.3d at 88 (citations omitted); *see also Grissom*, 549 F.3d at 313 (same); *Jackson v. Estelle's Place, LLC*, 391 F. App'x 239, 243 (4th Cir. 2010) (affirming application of same analysis to fees awarded under FLSA). But, the Supreme Court has said that trial courts "need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Thus, trial courts "may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

With this framework, I turn to the Motion. Plaintiffs seek attorneys' fees under 29 U.S.C. § 1132(g)(2)(D). The request is supported by the Declaration of Neil Gregorio, Esquire (ECF 8-9) and multiple invoices. ECF 8-10.[2] Mr. Gregorio is a shareholder at the law firm of Tucker Arensberg, P.C. (the "Firm") in Pittsburgh, Pennsylvania. The Firm has about 70 attorneys with a national ERISA practice. ECF 8-9, ¶¶ 3, 8.

Curiously, the Motion mentions three different amounts for legal fees. In particular, in the Motion, plaintiffs seek legal fees of $8,910, accrued through November 29, 2023. *See*, *e.g.*, ECF 8 at 2; ECF 8-1 (proposed Order); ECF 8-2 at 8. Yet, the Memorandum also states that, through November 29, 2023, the Firm's plaintiffs incurred fees of $7,076.50, not $8,910. ECF 8-2 at 8. And, in his Declaration, Mr. Gregorio asserts that, through November 2023, the legal fees

---

[2] Curiously, the Declaration of Mr. Gregorio indicates that the defendant is Cave Spring Painting, Inc. ECF 8-9, ¶ 1.

amounted to $6,589.50. ECF 8-9, ¶¶ 13, 17. Although Mr. Gregorio indicates that the Firm had not yet billed the Fund for work performed in December 2023 (*id.* ¶ 18), the invoice for December 2023 (ECF 8-10 at 17) reflects an additional fee of only $351.50, for 1.9 hours of work. The total of $6,589.50 plus $351.50 equals $6,941. The total of $7,076.50 plus $351.50 equals $7,428. These sums are substantially less than the requested sum of $8,910.

The Court is at a loss to understand why plaintiffs' submissions reference three different sums for legal fees.

The invoices (ECF 8-10) describe the work performed by three lawyers and a paralegal; the particular person who performed the work; the dates the work was performed; the length of time expended; and the hourly rate of the lawyer or paralegal. Most of the work was performed in 2023, although some was performed in 2022. *See* ECF 8-10 at 1.

Mr. Gregorio, an experienced ERISA attorney (ECF 8-9, ¶¶ 4, 5, 6, 7, 8) and shareholder of the Firm, was admitted to the Pennsylvania Bar in 2003. *Id.* ¶¶ 2, 7. He reviewed the work performed in connection with the case. His requested hourly rate of $325 is reasonable, and fits within the range for lawyers with fifteen to nineteen years of experience ($275–$425) as well as lawyers with twenty years or more at the bar ($300–$475).

Patrick Kukalis is a lawyer with less than five years of experience. ECF 8-9, ¶ 11. For him, Mr. Gregorio specifies an hourly rate of $275. *Id.* ¶ 13. However, the invoices actually reflect a billing rate for Mr. Kukalis of $215 per hour, not $275. *See*, *e.g.*, ECF 8-10 at 8. Based on 7.6 hours of work performed by Mr. Kukalis in 2023, Mr. Gregorio claims legal fees of $1,634 for Mr. Kukalis's work.

Appendix B to the Local Rules for this District specifies a fee range of $150 to $225 for lawyers with less than five years of experience.  I will allow an hourly rate of $215 per hour for Mr. Kukalis.

As noted, according to the submissions, Mr. Kukalis performed 7.6 hours of work on the case.  In particular, he reviewed the file and relevant documents, conducted research on default procedures, and drafted the complaint.  *See* ECF 8-10 at 7-8.  Given that Mr. Kukalis is described as a person assigned to the Firm's "ERISA litigation group representing [the firm's] various multiemployer trust fund clients . . . ." (ECF 8-9, ¶ 11), that expenditure of time seems somewhat excessive for the work described and submitted.  I shall award a fee based on 6.6 hours of work.  At $215 per hour, this equates to $1,419, not the requested sum of $1,634.

In addition, on March 6, 2023, Mr. Gregorio conferred with Kathleen Nandan, a seasoned attorney in the Firm with over 25 years of trial experience.  ECF 8-9, ¶ 10.  Mr. Gregorio's billing entry states: "Directing Case Strategy."  He billed for .4 an hour, at the rate of $325 per hour.  The invoice entry for Ms. Nandan for March 6, 2023 states:  "Case Review With N. Gregorio; Call With Owner Regarding Payment."  She billed for .6 of an hour at $365 per hour.

Lawyers at a firm often confer on cases.  But, this does not require the Court to impose on the defendant what is, in essence, a duplicate billing. Therefore, I shall disallow Mr. Gregorio's fee for .4 of an hour, at the hourly rate of $325, which equates to $130.  Instead, I will award the .6 of an hour requested for Ms. Nandan on that date, at a rate of $365 per hour.

In total, with respect to Ms. Nandan, I will award fees for 1.3 hours of work performed in 2022, at the rate of $350 per hour, which is the rate for Ms. Nandan's services in 2022. ECF 8-9, ¶ 13; ECF 8-10 at 1.  And, I will award fees for 4.8 hours of work she performed in 2023, at the rate of $365 per hour, which corresponds to the rate for Ms. Nandan's services in 2023.  These

rates fall within the range set forth in Appendix B for a person with Ms. Nandan's experience. Therefore, the total fee awarded for Ms. Nandan's work amounts to $2,207.

Finally, the Firm charged an hourly rate of $185 for its paralegal. This exceeds the top end of the fee range for paralegals, as set forth in Appendix B to this Court's Local Rules. The approved range is $95–$150.

The paralegal billed 13.1 hours at $185 per hour, for a total of $2,423.50. I will allow a rate at the top end of the range—$150 per hour. For 13.1 hours of work, this yields a fee of $1,965.

Accordingly, I shall award legal fees in the total sum of $5,786.

Therefore, I shall enter judgment in favor of the Fund and against Sun Art in the following amounts:

| | |
|---|---|
| Principal Withdrawal Liability Payments | $175,551.00 |
| Interest through December 8, 2023 | $8,873.49 |
| Interest beginning December 9, 2023, to the date of entry of Judgment, at the Rate of $29.91 per day, *i.e.*, 132 days | $3,948.12 |
| Liquidated Damages | $25,689.60 |
| Attorneys' Fees | $5,786.00 |
| Costs | $507.32 |

An Order follows.

Date:  April 19, 2024                             /s/
                                                                  Ellen L. Hollander
                                                                  United States District Judge

8